DISTRICT JUDGE FAGG
dissenting.
¶40 I respectfully dissent. At the outset, I would like to state the majority opinion is well-written and has fairly and thoroughly analyzed the WCC opinion. The majority also makes a good argument this claimant should be entitled to on-going payments for prescription pain and depression medication. However, simply put, the majority’s argument should be made to the legislature. As policymaker, the legislature can consider the arguments made and change the law which, as the WCC correctly found, is that Hiett is not entitled to payment for her prescription drugs unless the medications would enable her to return to employment and, once employed, enable her to continue working.
¶41 Today the majority concludes the WCC erred when failing to conclude the word “achieve” means the same thing as “sustain.” I disagree. Hiett’s reservation of medical benefits can only entitle her to benefits available under Montana statutes. As the majority correctly points out, “primary medical services” are defined as “treatment . . . necessary for achieving medical stability.” Section 39-71-116(25), MCA (1995) (emphasis added). On the other hand, “secondary medical services” are defined as “medical services ... that are considered not medically necessary for medical stability.” Section 39-71-116(29)(a), MCA (1995). The WCC concluded, as have other jurisdictions cited in the majority opinion, that medical stability is synonymous with “maximum healing,” “maximum medical healing,” and MMI. Thus, the WCC correctly determined there was no statutory authority for *107 continuing payment of Hiett’s prescriptions beyond MMI, as they were not primary medical services.
¶42 Today’s decision changes Montana law and redefines “primary medical service” as treatment necessary for achieving and sustaining medical stability. But it is obvious the 1993 legislature intentionally amended the statutes noted above in an attempt to cut costs. By its ruling, the majority has made new law. That is not this Court’s job. ¶43 This Court has previously held that legislative intent should be determined from the plain meaning of the language used, if possible, and that a statute should be read and applied as a whole in order to give effect to the statute’s purpose and avoid absurd results. S.L.H. v. State Compensation Mutual Ins. Fund, 2000 MT 362, ¶ 17, 303 Mont. 364, ¶ 17, 15 P.3d 948, ¶ 17. A plain, commonsense reading of the statutory provisions discussed in the majority opinion yields a necessary conclusion as to a general, overriding legislative intent. The legislature was attempting to reduce costs.[1]
¶44 The “plain meaning” of “achieve” is “to accomplish; carry out successfully.” Shorter Oxford English Dictionary, 5th edition, 2002. Yet the majority arrives at an expansive interpretation, adding “sustainment,” which widens the scope of “primary medical benefits.” Adding language to a statute is inappropriate, particularly when doing so increases costs and coverage the legislature specifically intended to curtail.
¶45 The majority reasons that denying Petitioner her pain and depression medication would yield an “absurd” result. While I do not fault the majority for its strong distaste for the statutory scheme as written, I cannot conclude that it constitutes an absurdity which would permit us to change the written law.
¶46 As § 39-71-116(25), MCA (1995), is written, an injured worker will only receive primary medical benefits up to the point they reach their maximum state of healing-or “medical stability.” Thus, we come to unpleasant situations such as the one before us. Eula Mae Hiett *108 reached medical stability. As her pain and depression medication at that point no longer fit under either the definition of primary or secondary medical services, she was no longer entitled to her medication. But if and when she relapsed to a sub-maximum medical improvement level, those drugs would become “primary medical services,” and would again be covered.
¶47 Many descriptions for such an approach come to mind. Many might agree the majority is not far off when it calls such an approach “unreasonable and unjust.” But that is not a reason for a court to rewrite a law. A six-year-old child could be diagnosed with leukemia tomorrow, and if no law would require anyone to pay a cent for his care, most would think it unreasonable and unjust. However, that would not be cause for us to write law requiring coverage. The same principle applies here. When it comes right down to it, the basis for the majority’s holding is their sympathy for the Petitioner. I would leave redefining or changing the law to the Montana legislature, who hears sympathetic pleas daily during their legislative sessions, and can properly weigh those sympathies and write law accordingly.
¶48 In summary, I would affirm the WCC. In a 17% page, single-spaced opinion, it painstakingly analyzed Montana law and correctly concluded there was no statutory authority for continuing Hiett’s prescriptions. Hiett should only receive those benefits Montana law allows, and it is not for this Court to expand those benefits or Montana law.
JUSTICE RICE joins in the foregoing dissent of DISTRICT JUDGE FAGG.
CHIEF JUSTICE GRAY joins in the foregoing dissent of DISTRICT JUDGE FAGG.

 This point is beyond debate. Indeed, even counsel for both Petitioner and Amicus, in oral arguments and/or via brief, have acknowledged the legislature’s obvious cost-cutting motives. Amicus refers to the legislature’s motive for these statutes as being, “simply to save costs.” Brief of Amicus Curiae, dated April 18, 2002, p.19. Petitioner notes the very distinction between primary and secondary medical services is the product of a 1993 Amendment aimed at cutting costs, and documents the legislature’s steady march away from the WCA’s originally stated purpose in an effort to save money.’ “It is well known that beginning in 1987 and continuing to the present, the Montana Legislature has tinkered with worker’s compensation in response to a proposed business crisis in the state.’” Brief of Appellant, dated March 12, 2002, p.21.